May it please the court. My name is Amanda Altman and I represent the appellant, Rayford Evans. There are two issues in this case. The denial of Mr. Evans' motion to suppress and the insufficient evidence presented to sustain the conviction for attempted sexual exploitation of a minor. First we are asking the court to reverse the district court's order denying the motion to suppress. It is undeniable that a dry read of the conversation between Officer Smith and Evans leaves a reader uncomfortable. These are not my words. This is a direct quote from the report and recommendations in this case. Smith told Evans that he wanted to seize a cell phone. Evans said no, not without a warrant. Smith replied immediately, yes, you will, absolutely, or you can go to jail for obstruction. You've added some words there. Yes, go ahead. I was paraphrasing, Your Honor. I apologize. That's okay. Go ahead. When you say he said, it would be better if you used the precise words. Yes, absolutely, you will, or you can go to jail. There's no you will in what I have, Counsel. It says yes, sir, absolutely, or you can go to jail for obstruction, okay. Okay, Your Honor. That's the words I have. Go ahead. And I apologize. That's not what I had in mind, but I don't know the direct quote, but it's yes, you, or you can go to jail, in my notes, Your Honor, or you can go to jail for obstruction, and I agree with your reading of it. Sure. But hard on the heels of that, doesn't he say that because you can destroy evidence on that phone right now, I have every right to walk in and grab those phones, right? And isn't that really, as opposed to a threat of seizure, isn't that really a statement of exigent circumstances? And that if there's probable cause, then exigent circumstances clearly allows him to seize the phone, and if, in fact, he refuses to produce it in the face of exigent circumstances, that is an obstructive behavior, isn't it? So, I mean, I'm not sure the magistrate judge is analyzing it the right way either when I saw it, because when I read it, I said if you take what was said over that period of conversation, it looks more like an assertion of exigent circumstances to me than a claim of an absolute right to seize. Your Honor, I do not believe that either of the statements that he made, that he could go into that house without a warrant to seize the phone, or that he could arrest him for obstruction, were what he could do under the law. If he told Mr. Evans that he was going to detain him while he got a search warrant so that he could go back in and delete those messages, that would be something that he could do under the law. If he says that he's going to seize the phone, if he told Mr. Evans, hey, I'm going to have to seize that phone, or I'm going to have to get a search warrant, I believe that that would be a lawful authority under these circumstances. But telling him that you're either going to go to jail for obstruction, which he had not obstructed at this point in time, because obstruction is defined under RSMO 576.03, and states that a person commits the offense of obstructing government operations if he supports the performance of a governmental function by the use or threat of violence, force, or other physical interference or obstacle. And the Missouri courts have said that there has to be some kind of affirmative act of physical interference required for the conviction. And so, and I think you've stated this, and the district court stated this, that his immediate oppositional response made it reasonable for the officer to believe that he intended to prevent him from obtaining that cell phone. However, this was a contradiction from what is actually in the video and what's actually in the court's order, where she just also describes the interaction between Evans and Smith as cordial and respectful at all times. Well, they keep saying they're giving each other respect. You notice that. I do, Your Honor. Yes, yes. And does this, is this partly nullified, even without Judge Erickson's point, by the simple fact that then they go over a consent immediately on the same page of the transcript, they start going over the consent-to-search form? Your Honor, the consent-to-search form, the written consent was tainted by that initial interaction and conversation because the initial consent to seizure was coerced. Because with attenuation, it can't apply because of the application of that third factor, the purpose and flagrancy of the official misconduct. Here, there was a threat of arrest for a wholly independent crime, a crime that under RSM 0576.030 could not be charged based upon the facts and circumstances of this encounter. And a crime that was based solely on Evans' right of refusal. And so that misconduct is flagrant and weighs heavily against that attenuation. Only after the statements that Officer Smith made did Evans say, I guess. Counsel, where is the unambiguous statement on the part of your client of not consenting? Or seeking counsel? Where's the unambiguity? At the initial time that Officer Smith requested that he seize the phone, he said no. He says no, but it means no. Go ahead. And I don't know the exact wording, but he says it again. He says not without a warrant. And that's when those statements of him saying that he will go to jail come into play. And I would argue that coercion is the use of express or implied threats of violence or reprisal or any other intimidating behavior that puts a person in immediate fear of the consequences in order to compel that person to act against his or her will. And we saw that Evans' will at the initial time of the request of seizure was that he was going to deny consent. All this happened in under two minutes, right? Everything, including the consent form. It did, Your Honor. How do you think that cuts? I don't think. It matters. How do you think that counts? I don't think the timing. What's it mean? I don't think the timing or the tone of the conversation matter in that. Hum. Given the. I thought you'd argue it was so close to each other it had some effect. And I mean, it's immediate. I mean, he immediately did consent after the threat of incarceration. Yes. But I would say that he was merely acquiescing by choosing one of two unwanted alternatives that were presented before him. And so for that timing, then it does matter because he was choosing between a rock and a hard place. Either go to jail and the phone is taken anyway or he consents. Here's another interesting twist to this case. After all this, he gets to go in the house and try to delete some stuff. Which. For several minutes, he's in the house deleting or trying to delete some stuff on the phone. Does that wipe out any worries about the first stuff? Well, Your Honor, I would say that the fact that Evans deleted or didn't delete anything on his phone, whether or not that was the ultimate result, isn't the relevant. No, it isn't ultimate. It's within the few minute time frame. In fact, I think he's longer than two minutes. I think the court says several minutes. Yes, Your Honor. But he spends more time deleting than talking to the officer. And I think that goes to the exigent circumstances argument. However, at that point in time, determining whether or not there are exigent circumstances, that deletion cannot come into play because the ultimate findings of that illegal seizure cannot be used to bolster the need for the exigency at the time. And when Smith decided to go do that knock and talk approximately one hour after receiving that information, and the first thing that he told Evans was that there are allegations of him videotaping girls. When Evans chose to not grant that consent and requested a warrant, it was well within his right to do so. It doesn't bolster the claim that the destruction of evidence was imminent, and Smith cannot create his own exigency by the way that he went about the investigation. This is sort of like a TV show because then the next twist is inevitable discovery. Because he was such a bad deleter, it was going to be inevitably discovered. And, Your Honor, I... Do you understand that point? Because as you know, he only deleted it like I would delete it, you know, the first delete. Not three or four deletes and hiding it somewhere. He just did the first delete, so it was in the deleted file. Your Honor, the inevitable discovery does not apply either. There was no probable cause for a warrant at this time. And more importantly, how can Discovery Bowl people... How could there not be sufficient evidence to get a magistrate to give a warrant when you've got the testimony of the victim saying, I saw the camera in the transom over in the bathroom. She makes a report to a law enforcement officer who happened to be related to... I mean, there's... And he's the only other adult in the room. He's the only other adult in the house. I mean, it really seems there would be a basis for investigating. I believe there would be a basis for investigating, Your Honor. However, there was a generic description of a phone, a black phone with some cameras on the back end. With three lenses, which describes... And it's a pretty generic description of a phone. In addition, they talked to two separate people, neither of which is the actual victim, this officer who investigated. One of them is Ansel Teal, and Ansel Teal is unknown to Smith, so he doesn't know what his credibility is. In addition, Ansel Teal was not present during the time this defense conduct occurred and was only relaying the information that the victim had told him. And so then he speaks to Charles Roper. And Charles Roper is known to Smith. I will admit that. He was a friend, co-worker, acquaintance of him. But the thing is, when he spoke to Charles Roper, Officer Smith did not know whether or not he gleaned his information from the actual victim or from Ansel Teal. So at the time, saying that the two stories were corroborated by these two independent people that were actually not present is not true, because Smith did not know whether or not that information came from Ansel Teal himself or the victim. And so you really have one person unknown to the officer telling this story and verifying that the phone matches. So I do not believe that there was probable cause at the time. But getting back to Your Honor's question about, I believe, inevitable discovery, I would say that there was no probable cause for the search warrant at that time. But more importantly, I don't believe that the, how can the discovery be both, how can it be inevitable if there are exigent circumstances? Law enforcement cannot be excused from getting a warrant because evidence would be. The exigent could be the bleeding person in the car at the time of the accident. And the inevitable discovery is when the car gets to the police station and they find the cocaine there. But in this particular circumstance, just because if you're saying that the evidence would be deleted unless you seized it at that moment in time, you cannot then be excused from the warrant for an inevitable discovery saying that, oh, it would have been discovered even if you had gotten a warrant. It has to be one or the other. Counsel, you're within your rebuttal time. You can continue if you like or reserve. I would like to reserve at this time, Your Honor. Mr. Kester. Good morning, and may it please the Court. My name is Jack Kester, representing the government in this case here today. As Ms. Altman indicated, there are two issues on appeal. I'm happy to talk about the sufficiency of the evidence if the Court has any questions about that. In our view, the evidence was simply overwhelming that there was enough evidence to support Mr. Evans' conviction for attempted sexual exploitation of a minor, especially in light of the in-bank decision from this Court in McCoy, which upheld the conviction for the completed crime, not an attempt to commit the offense. But as most of the discussion was concerning these suppression issues, I'll start with that. There were multiple layers to the suppression issues in this case. Both the magistrate judge and the district court, they both found that consent was voluntary under the totality of the circumstances. Both the consent to initially turn over the phone, the initial seizure, and then the consent to search the phone when he signed that written consent to search form. The district court also noted that even if that initial seizure of the phone somehow ran afoul of the Fourth Amendment, the attenuation doctrine applied because the subsequent written consent to search the phone purged the taint of any constitutional violation. It was within two minutes. Did the district judge expressly find within two minutes it was signed? With the timeline, the body cam, both the magistrate judge and the district court, they both found that their analysis of the issues was tremendously aided because we have this all on videotape, and it's a good quality recording. It captured the entire interaction. The initial conversation on the front porch, that lasted about 90 seconds. You're talking about a minute and a half. And then Mr. Evans then goes inside the house unaccompanied, and the officer addressed that at the evidentiary hearing. He said, in hindsight, probably shouldn't have done that because he could have gone in to delete evidence from his phone during that time. He did delete some, right? Yeah, so the evidence was the videos in question that formed the basis of his conviction. They were found in the trash folder of that phone. So he deleted them. We could not say at what time he deleted that material. We don't know if he deleted it in those three minutes. But then there was a discussion as well. There was a second phone, and the officer was attempting to Mr. Evans was trying to find that second phone, and this is all captured on the body cam footage. And he claimed he couldn't find it. And after he was rummaging around for several minutes, the officer finally just said, well, if this is the phone you mainly use, I think he said, we'll stick with this one. But officers then came back later that night with a search warrant, and they found that second phone. And the evidence at trial showed that just three to four minutes after the officer left with the other phone, he completely wiped all data from that second phone. It was restored to its factory settings, and the evidence at trial was that he did that just three to four minutes after Officer Smith left. But the district court below, they made very thorough findings that consent was voluntary under the totality of the circumstances. And as an alternative ground, as Judge Benton mentioned before, we have the exigent circumstances and the inevitable discovery doctrine. The evidence was clear. Officer Smith testified at the suppression hearing that if Mr. Evans refused to turn over that phone, he was going to secure the house and apply for a search warrant so he could get it. The evidence on that point was clear. Of course, he doesn't say secure the house, counsel. He acts like I'm going to go in and get it. He has those words. On the body cam footage, yes. But I'm referring to his testimony before the magistrate judge at the evidentiary hearing. And I want to go back to a point that Judge Erickson made about the exchange on the porch. Judge Erickson said, it sounds like you were. By the way, his words were, so without a warrant right now, I can walk in and just get it. I'm trying to show you respect, and I'll do that. I have every right to walk in and grab it. He didn't say anything about securing the house. No, no, he didn't say that. I was referring to his testimony before the magistrate judge at the evidentiary hearing. Which is clearly contradicted by the video recording. Well, he was referring to what he would have done had he refused to turn over his phone at that time. Okay. It's still clearly contradictory to, clearly contrary to the body. His testimony. He put it a different way on the porch. Yes, I did so. And you too. Go ahead. But as Judge Erickson said, this sounded like more of an assertion of exigency. And Judge Erickson is exactly right on that point. And as Ms. Altman started her argument with the passage from the magistrate judge about the dry reading and so forth. But here, context matters. And again, both judges, the district court and the magistrate judge, they emphasized over and over again. That the analysis of these issues was tremendously aided by the body cam footage. Because you can see the entire interaction. It's a very calm conversation. And so the point that I was making with Judge Erickson, more like an assertion of exigency. So the full, when Mr. Evans says, not without a warrant. Officer Smith says, yes sir, absolutely. Or you can go to jail for obstruction. Okay. That's my two options. Because here's the thing. I leave now. How do I know you're not going to delete something? So without a warrant, right now I can walk in and get that. I'm trying to show you a little respect. Because you can destroy evidence right now. I have every right to walk in and grab those. I'm trying to show you a little respect. I'm going to need both phones. Are you willing to give those up? And he says, yeah, I guess. But this is important too. Does it matter if he was being deceptive in making those statements too? Well, the officer, our view is he wasn't being deceptive. What do you think he meant by the statement he made after getting the consent that he BS'd his wife? Oh, he addressed that at the suppression hearing. And he said what he was referring to when he initially made contact with Mr. Evans. And he said, we got this allegation that you were recording this 15-year-old girl in the bathroom. And Mr. Evans immediately said, well, that's not true. And the officer said, and I agree, and I'm paraphrasing here. But he said, I don't see that this actually happened. But I have to investigate this. So when he said he BS'd his way through that, he testified at the evidentiary hearing that he was referring to his statements that he didn't believe Mr. Evans had committed the crime. That's what he testified. And that's in the report and recommendation from the magistrate judge following the evidentiary hearing. That's what he meant when he said that. But then immediately after that exchange, so Officer Smith, on two separate occasions, just in that one response, he mentions deleting evidence. He's trying to make sure that evidence doesn't get deleted. And then Officer Smith importantly says, okay, and I'm still going to go over the consent to search stuff. You can deny, but I'm going to go over everything with you. So he was making it clear what he's talking about at that point is the initial seizure of the phone to prevent the destruction of evidence, not a full search for the contents of the device. Did either the magistrate judge or district judge pay any attention to the fact that this is in the town of Donovan, Missouri, a 1,700-people town? I know it's a county seat and the only city in the county. Did he allude to the small town because that affects some of the dialogue here? Yes, and that was brought up at the evidentiary hearing. I'm sorry, did the district court or magistrate judge make any finding about the small town? Yes, in the report of recommendations, they do refer to this was a very, very small police force. In fact, the evidence that came out at the hearing was that there were only five law enforcement officers employed by the Donovan Police Department, and typically there's only one officer on duty at any time. And in this particular case, Officer Smith was the only officer on duty. His shift had just started at 4 p.m., and then he gets this call. And, of course, the call came in. The victim's father was a deputy sheriff for Ripley County. He was on medical leave recovering from surgery. But the officer knew, the victim's father knew this police officer, and he immediately called. And keep in mind, too, this is all done just a very short time after the recording was done. Mr. Evans recorded the 15-year-old in the bathroom just a few hours before the officer arrives at the scene. And with the exigency as well, there were findings that a big part of it was Mr. Evans knew about these accusations. Well, for one thing, he was basically caught red-handed. So he very well knew that he had been caught filming this 15-year-old girl. But the evidence at the hearing as well, it came out that Officer Smith said Mr. Evans' brother, Ansel Teal, he told Officer Smith, he said, look, my brother knows all about these allegations. And then so that increased the exigency as well. And that's why I think there's a case we cited in the brief, United States v. Shrum. And I think that case is helpful. That case likewise involved an investigation of sexual activity with a minor. Officers went into Mr. Shrum's home and seized cell phones without a warrant to prevent any destruction of evidence. And this court found that an important factor was that the defendant knew about the allegations in the hours leading up to the officer's arrival. And that was an important fact. But as I mentioned before, the district court, they found that the entire search, it was consensual. It was voluntary under the totality of the circumstances. And even assuming, for argument's sake, that it was somehow involuntary, the Fourth Amendment was still not violated under the exigent circumstances doctrine and the inevitable discovery doctrine. Unless there are any additional questions on the suppression issues, I'll briefly address the sufficiency of the evidence. Importantly, the district court here, Judge Fleissig, she made some remarkably thorough findings in support of this verdict. There was an oral pronouncement immediately following closing arguments. Those can be found in the transcript. A bench trial. A bench trial, that's correct. And page 224 to 231, I believe, she thoroughly explains why she's finding him guilty of this crime. And then in a written order denying Mr. Evans' motion for new trial, she goes into a tremendous amount of detail once again. As I mentioned, this case was tried in the wake of the embanked decision in McCoy. And McCoy, in some respects, was similar. Both cases involved secret recordings of a 15-year-old girl in a bathroom. One of the main factual differences was that McCoy involved a hidden camera in a fixed location, whereas here, Mr. Evans is in constant control, controlling the movements of this phone. But the main legal distinction, of course, was that McCoy was not submitted under an attempt theory. And here, we did submit this case under an attempt theory. So in McCoy, they actually had to prove that the images themselves were lascivious. We didn't have to shoulder that burden here because it was an attempt. But importantly, Judge Fleisig did find, she made specific findings that these videos were, in fact, lascivious. McCoy reaffirmed the use of the so-called dose factors in that analysis. And there were at least five dose factors present in these videos. Judge Fleisig found, well, of course, the minor was fully nude. There was no question about that. And Judge Fleisig found that the focal points were on the minor's pubic area. She also found that the videos were intended or designed to elicit a sexual response in the viewer and that the minor was indeed portrayed as a sexual object. And the setting of these videos was also sexually suggestive. As this court recognized in McCoy, bathtubs and showers are, quote, frequent host to fantasy sexual encounters. So that factor was met as well. But the facts of this case, in our view, it wasn't even a close call that he was attempting to capture these lascivious images. He went back to this door on three separate occasions. And as the court knows from reading the briefs, there's what you would call a transom window at the top of this bathroom door. Each time, he's bringing this step stool with him so he can get a better vantage point. And in between, there were three separate videos of the minor in the bathtub. After the first video, he retreats to his room, and this must have been an accidental recording, but there was a 19-second clip where the defendant actually can be heard saying, I've got an opportunity again. And then moments later, he brings the step stool back to the bathroom door, climbs up, and starts filming her for the second time. And it only ended during the third video because he got caught. The victim looks up. She's washing her hair. And you can see the precise moment when she looks up and sees the phone. He was caught in the act. I see that my time has expired, and I thank you for your time. We would simply ask that the court affirm the conviction and the denial of the motion to suppress. Thank you, Mr. Kester. Ms. Altman, your rebuttal. Thank you, Your Honor. And I just want to briefly touch on the exigent circumstances argument. Your Honor, unlike in Shrum, Smith did not have any concrete knowledge that evidence had already been deleted. And officers don't give people respect when they believe a true exigency applies. An officer that is afraid of deletion that could happen within mere seconds would not allow someone to be out of sight for three full minutes if they truly believe that that deletion of those videos were imminent. This is just a post hoc justification for the search. In addition, Your Honor, with regard to the sufficiency of the evidence, Evans had no realistic expectation of filming sexually explicit conduct. He and E.R. did not know one another. This was a first time meeting. They never spoke any words. Evans just knew that she intended to use that bathroom. And that is the crucial fact, because grooming activities do not normally involve lascivious displays of genitalia. And there was no evidence that was introduced that E.R. engaged in sexually explicit conduct, let alone that Evans knew if and when she tended to engage in that conduct. There are two distinct differences between Evans' case and the other cases that the government has cited. One is the lack of direction by Evans. In every other case, the defendant in some way persuaded or induced the victim to use a particular room, or use a bathroom, or pose in a certain way. In this case, that just did not occur. In addition, the second is preparation. In every other case, the video had already been set up, and it was at a level that was likely to cause videos of sexually explicit conduct, whereas where the rest of the body and the face were just an afterthought, secondary. Here, that is not the case. And I see my time has expired. Thank you. Thank you, Ms. Alton. Thank you also, Mr. Kester. Court appreciates both counsel's participation and argument before the court this morning. It's been helpful, and we will continue to study the matter and render a decision. Thank you.